## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LISA McMILLEN,                          )
                                        )
    Plaintiff,                          )
                                        )
               v.                  )          Civil Action No. 05-362 Erie
                                        )
GIRARD SCHOOL DISTRICT, *et al.*,       )          Judge Sean J. McLaughlin
                                        )
                                        )
    Defendant.                          )

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

    This matter is before the Court upon Defendants' motion for summary judgment.

### I. BACKGROUND

    On or about October 23, 2000, Defendant, Girard School District, hired Plaintiff, Lisa McMillen, as a part-time cafeteria helper at Rice Avenue Middle School ("RAMS"). (Plaintiff's Deposition, pp. 5-6). While employed in this position, Plaintiff would occasionally substitute as a custodian in the School District's Maintenance Department on a part-time, as needed basis, usually in the evenings. (Cornwell Aff ¶ 2). Plaintiff's supervisor, during the times that she worked as a custodian, was Defendant John Cornwell ("Cornwell"). Cornwell, at that time, served as Maintenance Director to the school district.

    In June or July, 2004, Cornwell received permission from Dr. Dean Maynard, the District Superintendent, to post an opening for a full-time (40 hours per week) custodial position. This position would split time between RAMS and the District's high school. (Maynard Aff ¶ 2). The job posting for the position indicated that the applicant should have "[g]ood communication skills" and would be expected to "[remain] on the school premises during assigned hours and during non-school hours when the use of the building has been authorized and attendance is required." On July 14, 2004, the District posted the position.

    The District's procedure for filling vacancies during the relevant time period required Maynard, the Superintendent, to first appoint an interview team to select interviewees, conduct interviews, and recommend a candidate for the position to the Superintendent. (Maynard Aff ¶ 5).

1

The Superintendent then would recommend a candidate to the School Board for approval. The interview team had no authority to hire a candidate or to directly recommend a candidate to the Board. The Superintendent was not obligated to select a candidate from among those recommended by the interview team. (Maynard Aff ¶ 6-9). The ultimate decision with respect to the hire rested with the Board. (Maynard Aff ¶ 10).

In preparation for the July, 2004 custodial posting, Maynard appointed Cornwell and Greg McClelland, the principal of RAMS, to serve as the interview team. Before the position was formally posted, Cornwell and Maynard contend that they had a conversation about several potential candidates that Cornwell wished to interview, including Plaintiff. (Cornwell Deposition, p. 54; Maynard Aff ¶ 3). According to Cornwell, when Plaintiff's name was raised, Maynard instructed Cornwell that he did not want Plaintiff recommended for the job. (Id.)

Maynard asserts that he had decided to exclude Plaintiff as a viable candidate for the job prior to her interview because he felt that her interpersonal skills were insufficient for the position of custodian. (Maynard Aff ¶ 4; Cornwell Dep pp. 54-55). Maynard felt that an essential requirement of the custodial position was that the person hired be able to interact effectively with the public, particularly during evening hours when public events were scheduled at the high school and, occasionally, at RAMS. (Maynard Aff ¶ 4). Maynard further asserts that he had received feedback from staff and employees calling into question Plaintiff's interpersonal skills, including various complaints that he purportedly received about her attitude and performance while she was working in the cafeteria. (Maynard Aff ¶ 14).

Cornwell testified at deposition that he accepted Maynard's instruction not to recommend Plaintiff for the position, but advised Maynard that he still intended to interview Plaintiff as a courtesy. Cornwell felt that, in light of Plaintiff's experience as a substitute custodian, she would expect to be interviewed and considered for the position, and Cornwell did not want to create disharmony by offending her. Maynard acquiesced. (Cornwell Dep pp. 56-57).

After the position formally posted, McClelland and Cornwell selected five applicants to interview, including Plaintiff. Four of the applicants were women, and four of the five had previous experience with the District performing substitute custodial work. (Maynard Aff ¶ 3; Attached Exs A-E). The male applicant, Mike Ferrington ("Ferrington"), had already been performing the high

school portion of the Custodial Position on an interim basis for the nine months prior to the posting. (Maynard Aff ¶ 23).

On August 19, 2004, McClelland and Cornwell conducted brief interviews of each of the five applicants. During her interview, Plaintiff indicated that she was asked two questions: whether she would continue to substitute for the District if she failed to receive the job, and whether she had any questions for the interview team. Following each interview, Cornwell completed an information sheet about each candidate, outlining some of the candidate's strengths and weaknesses. (Cornwell Dep pp. 48-50; Cornwell Aff ¶ 5, Exs. A-E). Plaintiff's sheet stated that she "doesn't always work well with others" and "is sometimes critical and bossy." Cornwell described Ferrington as "very conscientious" and noted his "good attitude." (Id.)

After concluding the interviews, McClelland and Cornwell testified that they independently concluded that Ferrington was the best candidate for the position. (McClelland Dep pp. 14-15; Cornwell Dep pp. 57-59). They recommended Ferrington to Maynard, who in turn recommended Ferrington to the Board. The Board approved the recommendation and awarded the position to Ferrington on August 23, 2004. (Maynard Aff ¶ 11). In addition to his interpersonal skills, Maynard claimed that he and the Board both valued the fact that Ferrington had a CDL license allowing him to drive a school bus. While this license was not a necessary qualification for the position, the District considered it valuable because it constantly struggled to find substitute bus drivers. (Maynard Aff ¶¶ 15-16).

On August 24, 2006, Cornwell telephoned Plaintiff to inform her of the Board's decision to hire Ferrington. According to Plaintiff, Cornwell stated that "Ferrington was awarded the position because . . . Cornwell felt that 'the job was better suited for a man' and that Mr. Ferrington had a CDL license." (Plaintiff's Dep p. 34; Complaint ¶ 29). Cornwell denies making any comments concerning the applicants' genders. (Cornwell Dep p. 65; Cornwell Aff ¶ 10).

Thereafter, Plaintiff contacted Maynard and expressed her concerns about Cornwell's alleged gender-biased explanation for hiring Ferrington instead of Plaintiff. (McMillan Dep pp 85-86). She claims that Maynard did not mention his concerns about her attitude or interpersonal skills. Instead, according to Plaintiff, Maynard pulled up her records, acknowledged her service with the district over the previous years, commented that she had ranked very high in the scoring for the job in

3

question, and suggested that perhaps she had not answered a question to the interview team's liking during the interview.  (Id.)

Plaintiff filed an EEOC charge on April 6, 2005.  The EEOC dismissed the charge and issued a Right to Sue Letter on or about September 23, 2005.  Plaintiff filed the instant lawsuit on December 7, 2005.

At oral argument on Defendant's motion for summary judgment, Plaintiff abandoned her retaliation claim and her Section 1983 claim (Count II and Count III of the Complaint).  (Transcript of Hearing on Motion for Summary Judgment ("Transcript"), December 21, 2006, p. 2).  Thus, the sole remaining issue for disposition is Plaintiff's allegation of Title VII gender discrimination (Count I).

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party.  Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id.  (quoting Matsushita, 475 U.S. at 587).

When a witness's credibility is critical to supporting the findings of fact relied upon to support summary judgment, the District Court must "consider whether there are sufficient grounds for impeachment that would place the facts to which [the witness] testifies in legitimate dispute."  Douglas El v. SEPTA, 2007 WL 799492, *3 (3rd Cir. 2007) (citing Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 302 n. 1 (3rd Cir. 1995).  This is because "[s]ummary judgment is

4

inappropriate when a case will turn on credibility determinations." Horowitz, 57 F.3d at 302 n.1 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). As the third circuit has recently noted:

> "[T]he burden of proof includes the obligation to persuade the factfinder that one's propositions of fact are indeed true. Black's Law Dictionary 190 (7th ed. 1999). Thus, if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

Douglas El, 2007 WL 799492, *3. Therefore, trial courts should act with "caution in granting summary judgment . . . in a case where there is reason to believe that the better course would be to proceed to a full trial." Liberty Lobby, 477 U.S. at 255 (citing Kennedy v. Silas Mason Co., 334 U.S. 249 (1948)).

## III. DISCUSSION

Generally, Title VII forbids an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate with respect to his compensation, terms, conditions, or privileges of employment," or to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex." 42 U.S.C. §§ 2000e-2(a)(1), (2). Intentional discrimination in employment cases fall within one of two categories: "pretext" cases and "mixed-motives" cases. See Price Waterhouse v. Hopkins, 490 U.S. 228, 247 n. 12 (1989) (plurality). In pretext cases, the familiar McDonnell Douglas/Burdine analysis applies. In a mixed motives case the analysis does not apply, and the plaintiff "has the burden of showing by evidence tied to a discriminatory animus that an illegitimate factor had a 'motivating' or 'substantial' role in the employment decision." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3rd Cir.1992) (citing Price Waterhouse, 490 U.S. at 258). This theory has been codified in the Civil Rights Act of 1991. See 42 U.S.C.A. § 2000e-2(m) (West Supp.1992). If the plaintiff makes such a showing, the burden shifts to the employer to prove by a preponderance of the evidence "that it would have reached the same [employment] decision ... even

5

in the absence of" the impermissible factor.  Price Waterhouse, 490 U.S. at 244-45.

Plaintiff conceded at oral argument that this case is properly analyzed only as a direct evidence case under the framework set forth in Price Waterhouse.[1]  Direct evidence means evidence sufficient to allow a jury to find that the  "decision makers places substantial negative reliance on [the Plaintiff's gender] in reaching their decision" not to hire her.  Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3rd Cir. 1998) (quoting Price Waterhouse, 490 U.S. at 277).  "At a bare minimum, a plaintiff seeking to advance a mixed motive case will have to adduce circumstantial evidence 'of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude."  Griffiths v. CIGNA Corp., 988 F.2d 457, 470 (3rd Cir.), cert denied, 510 U.S. 865 (1993) (quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2nd Cir. 1992)).

Plaintiff asserts that Cornwell's alleged statement that the custodial position was given to the only male applicant because "it was better suited to a male" is direct evidence of discrimination on the basis of gender.   Indeed, Defendants' concede that, "[s]hould the Court view Cornwell as a decision-maker responsible for Plaintiff's not being selected for the Custodial Position, his alleged statement is likely sufficient to satisfy the 'bare minimum' requirements" outlined in Griffiths."

---

[1] Plaintiff's counsel articulated this during an exchange at oral argument:

| | |
|---|---|
| Counsel: | [F]or purposes of today's motion, I believe we satisfy the burden under Price Waterhouse and we fit within that analysis.  And I think, to be candid with the court, I think that's where we would be going on this case.  These cases, it's difficult to procure the evidence.  But in this case, absent the comment from Cornwell, we wouldn't even be here today, and there wouldn't have been an EEOC filing, either. |
| The Court: | . . . You're putting everything on the fact that there is direct evidence of discriminatory animus in the decision-making chain, is that fair enough? |
| Counsel: | That's a fair statement, yes. |

(Transcript, p. 19).

(Memorandum in Support of Motion for Summary Judgment ("Memo in Support"), p. 15). Defendants contend, however, that Cornwell was not a "decision-maker" with regards to the specific decision not to hire Plaintiff.

It is undisputed that Cornwell, as a member of the two-person interview team, was charged with screening applicants for the Custodial Position, selecting those who he wished to interview from amongst the applicants, conducting the interviews, and forwarding the names of acceptable candidates to Maynard, the District Superintendent. Throughout the interviews, Cornwell took notes and filled out forms regarding his impressions of each applicant. Afterwards, Cornwell and McClelland discussed the candidates and their qualifications in the context of determining which name to forward to Maynard. (Cornwell Dep p. 58). While the final decision as to which applicant's name to forward to the Board rested with Maynard, Cornwell served as a conduit to Maynard for information and impressions about the candidates. In fact, the posting of the full-time Custodial Position resulted in large part from lobbying by Cornwell who, as Director of the Maintenance Department, was most cognizant of the need to hire a full-time custodian. (Cornwell Dep pp. 38-40). Broadly speaking, under the aforementioned administrative scheme, Cornwell would properly be considered a "decision-maker" in the selection process. See, e.g., Woodson v. Scott Paper Co., 109 F.3d 913, 922 (3rd Cir. 1997) (holding that an individual who had developed and presented a "ranking procedure" that was used to terminate an employee was a decision-maker even where that individual did not actually take part in ranking the terminated employee).

Nonetheless, Defendants argue that Cornwell cannot be considered a decision-maker with regards to *the specific decision* not to hire Plaintiff. Defendants argue that Maynard effectively eliminated Cornwell's discretion to recommend hiring the Plaintiff. It is well settled that "stray remarks in the workplace . . . cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiffs' burden in this regard." Price Waterhouse, 490 U.S. at 277. Thus, Defendants argue, "[i]t does not matter whether Cornwell 'would have discriminated' against Plaintiff based upon his alleged bias; Maynard's decision precluded any possibility of his doing so." (Memo in Support, p. 8).

Defendants correctly note that "a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit, <u>Williams v. Borough of West Chester,</u> 891 F.2d 458, 460 (3rd Cir. 1989), nor by simply raising concerns over the credibility of the moving party's witnesses, <u>Schoonejongen v. Curtiss-Wright Corp</u>., 143 F.3d 120, 129-30 (3rd Cir. 1998). In <u>Schoonjongen</u>, a critical issue arose as to whether a company's CEO/President had delegated a certain task to a subordinate. Plaintiff attempted to avoid summary judgment by calling into question the credibility of both the CEO and the subordinate, but failed to provide "even the slightest quantum of evidence or reasonable factual inference" to support their assertion that the delegation of authority had not taken place. <u>Id</u>. at 130. Moreover, the purported oral delegation of authority was substantiated in the record by affidavits and other evidence that the delegation had taken place, "even apart from [the subordinate's] own testimony to that effect." <u>Id</u>. The Court, therefore, concluded that "plaintiffs [had] not raise[d] a 'genuine' issue as to the delegation of authority, even on an implied basis." <u>Id</u>.

Unlike in <u>Schoonejongen</u>, however, we find that the Plaintiff's evidence is sufficient to create a reasonable factual inference. While Cornwell and Maynard both assert that the decision not to hire Plaintiff had been made by Maynard prior to the interview process as a result of his concerns over Plaintiff's attitude, Plaintiff claims that, when Cornwell phoned her to advise her of the decision to hire Ferrington, he made no mention of Maynard's request. Neither did he inform Plaintiff that the interviewing committee had been more impressed with Ferrington's attitude and interpersonal skills than her own. Rather, according to Plaintiff, he simply told her that the position was best suited for a male and that Ferrington had a CDL license.

Additionally, when Plaintiff contacted Maynard after the interviewing process and expressed her concerns about Cornwell's alleged gender-biased explanation for the hiring of Ferrington, Maynard did not mention his concerns about her attitude or interpersonal skills. Instead, Maynard pulled up her records, acknowledged her service with the district over the previous years, commented that she had ranked very high in the scoring for the job in question, and suggested that perhaps she had not answered a question to Cornwell and McClelland's satisfaction during the interview.

"Summary judgment is inappropriate when a case will turn on credibility determinations." <u>Horowitz</u>, 57 F.3d at 302 n.1 (citing <u>Liberty Lobby, Inc</u>., 477 U.S. at 255). As the Third Circuit

noted in <u>Schoonejongen</u>:

> [C]ertain scenarios may arise where a material fact cannot be resolved without weighing the credibility of a particular witness or individual-such as when the defendant's liability turns on an individual's state of mind and the plaintiff has presented circumstantial evidence probative of intent. In such a case, we have said that summary judgment is inappropriate because there is a sufficient quantum of evidence on either side for reasonable minds to differ and therefore the issue is "genuine."

<u>Id</u>. at 461 (internal citations omitted); <u>see also</u> <u>Hozier v. Midwest Fasteners, Inc</u>., 908 F.2d 1155, 1165 (3rd Cir. 1990) ("[N]othing in Rule 56 prevents [the nonmoving party] from creating a genuine issue of material fact by pointing to sufficiently powerful countervailing circumstantial evidence."). Based on the previously described evidence, we find that the Plaintiff has put forth sufficient evidence to raise a triable issue of fact as to whether gender bias tainted the hiring decision.

Finally, Defendants argue that, even if the Court finds that Cornwell's allegedly biased statement was not a stray remark by a non-decisionmaker, they can still prevail in their motion by affirmatively demonstrating that the same decision would have been made on legitimate grounds:

> Where the plaintiff proves that discrimination was a motivating factor in the employment decision but the defendant responds by demonstrating that it would have reached the same result in the absence of the unlawful motive . . . a court may not award damages and may only grant declaratory relief, certain injunctive relief, and the costs directly attributable to pursuing the claim under § 107(a).

<u>Woodson</u>, 109 F.3d at 932 (citing 42 U.S.C. § 2000e-5(g)(2)(B)). The employer must show that its legitimate reason, standing alone, would have induced it to make the same decision at the time of the decision. <u>Price Waterhouse</u>, 490 U.S. at 252.

Defendants argue that Ferrington was clearly the most qualified candidate and that, despite Cornwell's alleged bias towards a male for the position, the respective merits of the applicants provide a legitimate reason for the hiring decision.   Defendants assert that the nature and amount of substitute work performed by each applicant set them apart, noting that, during the 2003-04 school year, Ferrington subbed 463 hours in over 100 days. (Cornwell Aff ¶ 6).  They also note that Ferrington had previously substituted in another school district and had the CDL license. (<u>Id</u>. at ¶

9

8).  In contrast, Plaintiff had only substituted 276.25 maintenance hours in 45 days that year, and had no prior custodial experience.  (Id.)  Further, Cornwell asserts that Ferrington had, during his time with the District, become experienced with the operation of outdoor power equipment, and the operation of high speed buffers, sanders, and other equipment routinely used in custodial work.  (Id. at 9-12).  Finally, Defendants reiterate their previous assertion that Plaintiff's attitude and interpersonal skills were a factor in the hiring decision.

On the other hand, Plaintiff points to Cornwell's deposition where he admitted that all of the candidates were qualified and that he wished he could have hired all of them.  (Cornwell Dep pp. 51-53).  Cornwell conceded that Plaintiff was very familiar with the job and had performed it with no problems or shortcomings in the past.  (Id. at 58).  He also admitted that many of the skills ascribed to Ferrington, such as his ability to run outdoor equipment, a "bleacher mule" device, and to drive a bus, were either not part of the job description for the Custodial Position, or were skills that could be easily taught to any applicant.  (Id. at 58-59).  In short, while Ferrington was clearly qualified for the position, we cannot conclude as a matter of law that those qualifications were so superior to those of the Plaintiff that he would have been hired even in the absence of the alleged gender bias.  That issue is properly reserved for the jury.


## IV. Conclusion

For these reasons, Defendants' motion for summary judgment is denied.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LISA McMILLEN,                          )
                                        )
          Plaintiff,                    )
                                        )
                    v.                  )          Civil Action No. 05-362 Erie
                                        )
GIRARD SCHOOL DISTRICT, *et al.*,       )          Judge Sean J. McLaughlin
                                        )
                                        )
          Defendant.                    )

## ORDER

AND NOW, this 28th day of March, 2007, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment is DENIED.

                                        /s/ Sean J. McLaughlin
                                        United States District Judge

cm: All parties of record. ___